**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-5304-16T1
                       A-2120-17T1

P.H.,

        Plaintiff-Appellant/
        Cross-Respondent,

v.

E.M.,

        Defendant-Respondent/
        Cross-Appellant.[1]

_____

Argued January 7, 2020 – Decided February 19, 2020

Before Judges Yannotti, Hoffman and Currier.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FM-02-0793-98.

Francis W. Donahue argued the cause for appellant/ cross-respondent (Donahue, Hagan, Klein & Weisberg, LLC, attorneys; Francis W. Donahue, on the briefs).

---

[1] Because we discuss information contained in records of the Family Part proceedings to which the public does not have access, we use initials to identify the parties and other individuals. R. 1:38-3(d)(1).

Marianne Quinn argued the cause for respondent/cross-appellant (Meyerson, Fox, Mancinelli & Conte, PA, attorneys; Marianne Quinn and Kiera E. Kenniff, on the briefs).

PER CURIAM

In A-5304-16, plaintiff appeals and defendant cross-appeals from an order of the trial court, dated June 16, 2017, which allocated the college costs and related expenses for their daughter, M.H., and denied their respective applications for attorney's fees. In A-2120-17, plaintiff appeals from the court's orders dated December 1, 2017, which enforced the June 16, 2017 order and denied plaintiff's cross-motion for attorney's fees. We address both appeals in this opinion. For the reasons that follow, in A-5304-16, we affirm on the appeal and cross-appeal; and in A-2120-17, we reverse and remand for further proceedings.

I.

Plaintiff and defendant were married in 1994, and M.H. was born in September 1996. The parties separated in 1997, and the marriage was dissolved by a dual judgment of divorce (JOD), which was filed on May 9, 2000, and incorporated the parties' Property Settlement and Support Agreement (PSA). The PSA states that plaintiff would pay defendant a lump sum of $150,000 for

alimony and equitable distribution.  Plaintiff also agreed to pay $1500 per month for child support, to maintain life insurance and medical insurance for M.H., and to pay M.H.'s reasonable medical expenses.

Although M.H. was only three years old at the time of the divorce, in paragraph three of the PSA, the parties addressed payment of her private grammar school, high school, and college tuition.  Concerning grammar school and high school, the parties agreed that M.H. would apply to Horace Mann School in New York City, plaintiff's alma mater, and that she would attend Horace Mann "if [the parties] agree she is best suited for" that school.  M.H. could also apply to other schools, and plaintiff agreed to "pay the tuition for the private school [M.H.] attends."

The PSA further provides that the parties would consult on the selection of a college for M.H. and take her preferences into account.  The PSA states that if M.H. gains admission to one of certain named Ivy League colleges, plaintiff would "pay the tuition and reasonable school-related expenses" for her attendance at that school.  The PSA also stated that if M.H. lives away from home while attending college, plaintiff's child support obligation will decrease, either as agreed upon by the parties or as determined by the court.

A-5304-16T1

Defendant later remarried and had three children with her new spouse. Plaintiff also remarried and had a child. M.H. was not accepted by Horace Mann. Instead, she attended The Chapin School in New York City, beginning with kindergarten.

In June 2003, plaintiff filed a motion to reduce his child support obligation. He asserted that in 2000, his net worth totaled $9,721,999, but he estimated that his net worth had "declined more than 100%" since that time, and that his debts exceeded his assets.

The parties eventually agreed to settle the dispute, and the settlement was memorialized in a court order filed May 13, 2004, referred to herein as "the Agreement." The Agreement provides in relevant part that:

> 1. Plaintiff, [P.H.], shall pay tuition plus all tuition increases for the parties' daughter, [M.H.], incurred at The Chapin School now and in the future through the twelfth grade and [M.H.] shall continue and attend The Chapin School through twelfth grade.
>
> 2. Aside from The Chapin School tuition and any increases in same through the twelfth grade, [P.H.] shall have no other obligations for direct or indirect child support for [M.H.] other than he shall be responsible for one-half of the uncovered medical, dental, pharmaceutical, and optical bills for said child.
>
> . . . .

A-5304-16T1

7.  Both parties further agree that there shall be a ten (10) year moratorium on any issues of child support and both parties further agree that their agreement as contained herein relative to their respective child support obligations shall be firm and there shall be no modification of the within agreement for a period of ten (10) years, under any circumstances.

. . . .

9.  Where not in conflict with the within Order, the terms of the parties' prior Property Settlement and Support Agreement of March 30, 2000 shall remain in full force and effect.

On July 22, 2004, the trial court amended its May 13, 2004 order.  The amended order required defendant to "pay all activity fees and all other expenses for [M.H.] at The Chapin School, other than the tuition and any increases in same in the future."

In November 2014, after the ten-year moratorium in the Agreement expired, plaintiff filed a motion to compel defendant to pay all of M.H.'s college expenses.   The trial court referred the matter to mediation, which was unsuccessful.   In September 2015, M.H. enrolled in Duke University.

Thereafter, the court conducted a plenary hearing on plaintiff's motion. The hearing began on October 26, 2016, continued on fourteen non-consecutive dates, and concluded on May 3, 2017.   Plaintiff and defendant testified at the

5

hearing. Defendant also presented testimony from Dr. David Stein, a state-licensed and board-certified vocational and rehabilitation counselor.

On June 16, 2017, the judge filed a written opinion in which he concluded that the Agreement did not relieve plaintiff of his responsibility to contribute to M.H.'s college education. The judge found that tuition, fees, room and board, books, and personal expenses for M.H.'s attendance at Duke were approximately $73,000 per year, but noted that defendant claimed the costs would be closer to $83,400, if travel and spending money are included.

The judge then considered the relevant factors under N.J.S.A. 2A:34-23(a) and Newburgh v. Arrigo, 88 N.J. 529, 545 (1982), and found that the parties both were obligated to contribute to M.H.'s undergraduate education. The judge imputed annual income of $160,000 to plaintiff and $98,700 to defendant. Based on the amounts of income imputed to the parties, the judge determined that plaintiff must pay sixty-two percent of M.H.'s college costs and defendant must pay the remaining thirty-eight percent.

The judge denied the parties' respective motions for attorney's fees, and dismissed without prejudice plaintiff's request for a decision on the financing of M.H.'s graduate school education, finding that such a decision would be premature.

6

The judge memorialized his decision in an order dated June 16, 2017. Plaintiff filed an appeal from the court's order, and defendant filed a cross-appeal. As noted, the appeal was docketed under A-5304-16.

Thereafter, defendant filed a motion in the trial court to enforce the June 16, 2017 order and sought clarification as to "what is included in college costs and college related expenses." Plaintiff opposed the motion and filed a cross-motion which included a request for attorney's fees. By orders dated December 1, 2017, the judge granted defendant's motion, ordered plaintiff to reimburse defendant $33,658.06 for certain college costs and related expenses, and denied plaintiff's cross-motion.

Initially, plaintiff filed a motion under docket number A-5304-16 to vacate the December 1, 2017 order granting defendant's motion. Plaintiff argued that the trial court did not have jurisdiction to consider the motion and grant such relief. Plaintiff also moved to supplement the record. We denied both motions. Plaintiff then filed an appeal from the December 1, 2017 orders, which was docketed under A-2120-17.

In A-5304-16, plaintiff raises the following arguments:

> POINT I
> THE 2004 AGREEMENT PRECLUDES PLAINTIFF'S LIABILITY FOR M.H.'S HIGHER-EDUCATION EXPENSES.

POINT II

ALTERNATIVELY, EVEN IF THE 2004 AGREEMENT IS NOT CONTROLLING, [THE JUDGE'S] OWN FACT FINDINGS PROVE HIS APPORTIONMENT IS MANIFESTLY UNREASONABLE AND ESTABLISH DEFENDANT'S LIABILITY FOR SUPPORT FOR ALL OF M.H.'S COLLEGE EXPENSES.

POINT III

ALTERNATIVELY, IN APPORTIONING COLLEGE SUPPORT, [THE JUDGE] FAILED TO APPLY CONTROLLING LAW, DENIED PLAINTIFF ESSENTIAL DISCOVERY, AND MADE UNSUPPORTED FINDINGS CONTRARY TO ALL COMPETENT EVIDENCE.

POINT IV

[THE JUDGE] MISTAKENLY DENIED PLAINTIFF A COUNSEL-FEE AWARD.

POINT V

THIS COURT SHOULD DIRECT ANY REMAND BE REASSIGNED TO A NEW MOTION JUDGE.

In her cross-appeal, defendant raises the following argument:

THE TRIAL COURT ERRED IN DENYING DEFENDANT'S REQUEST FOR COUNSEL FEES AS [THE JUDGE] DETERMINED THAT PLAINTIFF'S POSITION THROUGHOUT THE PENDENCY OF THIS MATTER WAS NOT ADVANCED IN GOOD FAITH.

In A-2120-17, plaintiff argues:

POINT I

THIS COURT SHOULD VACATE, FOR LACK OF JURISDICTION PURSUANT TO [RULE] 2:9-1, [THE JUDGE'S] DECEMBER 1, 2017, ORDER ON DEFENDANT'S MOTION.

POINT II

ALTERNATIVELY, THIS COURT SHOULD REVERSE, FOR FAILURE TO STATE FINDINGS AND REASONS AS REQUIRED BY [RULE] 1:7-4(a), [THE JUDGE'S] DECEMBER 1, 2017, ORDER ON DEFENDANT'S MOTION. ([N]ot raised below).

POINT III

THIS COURT SHOULD REVERSE, FOR FAILURE TO STATE FINDINGS AND REASONS AS REQUIRED BY [RULE] 1:7-4(a), [THE JUDGE'S] DECEMBER 1, 2017, ORDER DENYING PLAINTIFF A COUNSEL FEE AWARD. ([N]ot raised below).

II.

Appeal No. A-5304-16

A.  The Agreement.

Plaintiff argues that the trial court erred in its interpretation of the Agreement.  He contends the Agreement relieved him of any obligation to pay a share of M.H.'s college costs and the court erred by concluding otherwise. Paragraph two of the Agreement states that "[a]side from The Chapin School tuition and any increases in same through the twelfth grade," plaintiff "shall

9

have no other obligations for direct or indirect child support" other than one-half of the uncovered medical bills.

The judge accepted defendant's testimony and found that in paragraph two, defendant had "agreed to waive child support" of $1500 per month for eleven years, which totaled $198,000, because she wanted to ensure that M.H. would attend The Chapin School through high school and that plaintiff would pay the tuition. The judge noted that neither paragraph two nor any other part of the Agreement mentioned college.

The judge pointed out that paragraph three of the PSA states that plaintiff would pay M.H.'s college "tuition and reasonable school related expenses for same" if she is accepted to and decides to attend one of certain named Ivy League schools. Paragraph three also states that "[w]hen [M.H.] attends college, providing she lives away, the amount of child support being paid by [P.H.] to [E.H.] will decrease" as agreed by the parties, or provided by court order. The judge found that in the PSA, the parties "recognized the distinction between child support and the costs of college."

The judge noted that the Agreement did not modify or replace paragraph three of the PSA because the Agreement did not address college at all. The judge stated that if the parties had intended to modify that provision of the PSA

in light of plaintiff's willingness to pay 100% of M.H.'s tuition at the Chapin School, the Agreement would have stated that plaintiff "shall have no other obligations for direct or indirect child support including college."

The judge also observed that in 2003, after plaintiff filed his motion for a reduction in child support, plaintiff testified at a deposition and denied he was unwilling to pay for M.H.'s college education. Plaintiff said the parties would "cross that bridge when we get to it." The judge found plaintiff's testimony supported the conclusion that the phrase "direct and indirect child support" in the Agreement did not relieve plaintiff of paying a share of M.H.'s college costs.

On appeal, plaintiff argues that the Agreement "unambiguously expresses the parties' intent" that he would "pay nearly all of [M.H.'s] child support," including her private school tuition at The Chapin School through the twelfth grade, while defendant would pay "nearly all other child support," including M.H.'s college costs. He contends the trial court added new terms to the Agreement and gave defendant "a better bargain" than the one the parties made for themselves.

"We review the Family Part judge's findings in accordance with a deferential standard of review, recognizing the court's 'special jurisdiction and expertise in family matters.'" Thieme v. Aucoin-Thieme, 227 N.J. 269, 282-83

(2016) (quoting <u>Cesare v. Cesare</u>, 154 N.J. 394, 413 (1998)). "The Family Part's 'substantial discretion' in determining child support applies equally to compelling a parent to contribute to their child's college costs." <u>Avelino-Catabran v. Catabran</u>, 445 N.J. Super. 574, 588 (App. Div. 2016) (quoting <u>Gotlib v. Gotlib</u>, 399 N.J. Super. 295, 308 (App. Div. 2008)). "We must accept the Family Part's determination concerning a parent's obligation to contribute toward college tuition, provided the factual findings are supported by substantial credible evidence in the record and the judge has not abused his or her discretion." <u>Ibid.</u>

Here, the judge applied well-established principles of contract interpretation when he interpreted the parties' Agreement. "The polestar of contract construction is to discover the intention of the parties as revealed by the language used by them." <u>EQR-LPC Urban Renewal N. Pier, LLC v. City of Jersey City</u>, 452 N.J. Super. 309, 319 (App. Div. 2016) (quoting <u>Karl's Sales & Serv., Inc. v. Gimbel Bros, Inc.</u>, 249 N.J. Super. 487, 492 (App. Div. 1991)), <u>aff'd</u>, 231 N.J. 157 (2017). "[W]hen the intent of the parties is plain and the language is clear and unambiguous, a court must enforce the agreement as written, unless doing so would lead to an absurd result." <u>Quinn v. Quinn</u>, 225 N.J. 34, 45 (2016).

"[I]f the terms of [a] contract are susceptible to at least two reasonable alternative interpretations, an ambiguity exists" and "a court may look to extrinsic evidence as an aid to interpretation." Barr v. Barr, 418 N.J. Super. 18, 32 (App. Div. 2011) (quoting Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am., 195 N.J. 231, 238 (2008)). However, even if the contract is clear and unambiguous, a court "may consider 'all of the relevant evidence that will assist [the court] in determining [its] intent and meaning.'" Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 118 (2014) (quoting Conway v. 287 Corp. Ctr. Assocs., 187 N.J. 259, 269 (2006)).

We are convinced that there is sufficient credible evidence in the record to support the trial court's conclusion that the Agreement did not relieve plaintiff of his obligation to pay a share of M.H.'s college costs. The court's finding is supported by the plain language of the Agreement. As the court noted, neither paragraph two nor any other provision in the Agreement specifically addresses M.H.'s college or college costs. Indeed, paragraph two of the Agreement pertains only to M.H.'s secondary school education at The Chapin School.

Moreover, the Agreement's ten-year moratorium on modification of support in paragraph seven ended in 2014, when M.H. was still in high school. When read together, paragraph two and paragraph seven support the conclusion

13

that the parties anticipated that the economic issues concerning college tuition and ongoing support for M.H. would be addressed after the moratorium ended.

In addition, in paragraph three of the PSA, the parties recognized the distinction between college costs and child support. The PSA provides that plaintiff's child support obligation would decrease if M.H. lived away from home during college. This provision of the PSA supports the trial court's finding that the parties did not intend that the phrase "direct or indirect child support," as used in the Agreement, would include M.H.'s college costs.

Plaintiff argues, however, that the judge erred by considering extrinsic evidence because the judge found that the relevant provision of the Agreement was unambiguous. We disagree. As noted previously, even though the Agreement is clear and unambiguous, the court had the discretion to consider all relevant evidence when interpreting the Agreement. Ibid. (quoting Conway, 187 N.J. at 269). The extrinsic evidence supports the court's conclusion that the Agreement does not relieve plaintiff of his obligation to pay a share of M.H.'s college costs.

Plaintiff further argues that the trial judge's interpretation of the Agreement is inconsistent with Raynor v. Raynor, 319 N.J. Super. 591, 596 (App. Div. 1999). In Raynor, the decedent and his first wife had two children.

When they divorced, the judgment required the decedent to maintain a life insurance policy his employer had provided, with his children named as "irrevocable beneficiaries for as long as [the decedent's] child support obligation continue[d]." Ibid. The judgment did not mention college expenses, but we held that the insurance policy was intended "to secure [the] decedent's support obligation, which encompasses a contribution for college costs." Id. at 611 (citing N.J.S.A. 2A:34-23(a)).

In this case, however, the PSA distinguished college costs from child support. In addition, the Agreement addressed the cost for M.H.'s attendance at The Chapin School, not M.H.'s college expenses. Furthermore, plaintiff's deposition testimony, which we discussed earlier, supports the conclusion that the Agreement did not relieve plaintiff of his obligation to pay a share of M.H.'s college costs. Thus, plaintiff's reliance upon Raynor is misplaced.

In further support of his arguments on appeal, plaintiff relies upon Jacoby v. Jacoby, 427 N.J. Super. 109 (App. Div. 2012), and Hudson v. Hudson, 315 N.J. Super. 577, 584 (App. Div. 1998). Plaintiff contends that our opinions in these cases show that the phrase "direct or indirect child support" in the Agreement includes college costs and expenses as a matter of law. He therefore

argues that the Agreement relieves him of any responsibility to pay M.H.'s college costs.  Again, we disagree.

In Jacoby, we stated that "[t]he payment of college costs differs from the payment of [basic] child support."  427 N.J. Super. at 121.  We also stated that child support for "college costs should be provided in addition to the amount of [basic] child support."  Ibid. (citation omitted).  Moreover, in Hudson, we stated that "[basic] [c]hild support and contribution to college expenses are two discrete yet related obligations."  315 N.J. Super. at 584.

Thus, Jacoby and Hudson do not support plaintiff's contention that the phrase "direct or indirect child support" in the Agreement includes college costs.  Rather, these opinions support the conclusion that there is a difference between basic child support and college costs, which the parties recognized in the PSA and the Agreement.  Jacoby and Hudson support the trial court's determination that the Agreement did not relieve plaintiff of his obligation to pay a share of M.H.'s college costs.

B.  Allocation of the College Costs.

Plaintiff argues that, assuming the trial court correctly found the Agreement does not relieve him of his obligation to contribute to the payment of M.H.'s college costs, the court erred by allocating sixty-two percent of those

costs to him. Plaintiff contends the court's apportionment is manifestly unreasonable, contrary to law, and unsupported by the record. He also contends the court's findings show that defendant should have the sole responsibility for M.H.'s college costs.

Absent an enforceable agreement apportioning child support and college costs, "a trial court should balance the statutory criteria of N.J.S.A. 2A:34-23(a) and the Newburgh factors, as well as any other relevant circumstances, to reach a fair and just decision whether and, if so, in what amount, a parent or parents must contribute to a child's educational expenses." Gac v. Gac, 186 N.J. 535, 543 (2006). Accord Avelino-Catabran, 445 N.J. Super. at 591 n.8. Our Supreme Court has observed that "the Legislature essentially approved" the Newburgh factors when it amended N.J.S.A. 2A:34-23(a). Kiken v. Kiken, 149 N.J. 441, 449 (1997).

In his opinion, the judge made detailed findings of fact regarding the twelve Newburgh factors. Among other things, the judge found that the parties had anticipated M.H. would attend college, and that the cost of M.H.'s attendance at Duke is currently about $73,000 per year, though defendant claimed the cost would be about $83,400 if travel expenses and spending money is included. The judge noted that these costs "will likely increase in the future."

The judge found that both parties had the ability to pay a share of these college costs. The judge rejected plaintiff's assertion that he did not have the ability to pay a share of these costs. The judge accepted Dr. Stein's opinion that plaintiff "should be able to enter the workforce and earn a base salary in the range of at least $160,000 to $250,000" as a marketing manager, financial manager, financial analyst, sales manager, investment bank manager, registered representative, or investment analyst and consultant. As noted previously, the judge imputed annual income of $160,000 to plaintiff.

The judge rejected plaintiff's testimony that he would be unable to secure employment in any of the positions cited by Dr. Stein. The judge found plaintiff's testimony was "not credible inasmuch as he has neither attempted to find any job nor attempted to obtain gainful employment or exhibit any motivation or intent to apply for any job, which could produce steady income."

In addition, the judge observed that defendant was a stay-at-home mother, which was due, in part, to the significant special needs of her oldest child. The judge pointed out that defendant has three advanced degrees. The judge noted that defendant had the ability to earn income in the field of microbiology, and cited the New Jersey Department of Labor and Workforce Development's Occupational Wage Survey (Wage Survey), which states that "microbiologists

can be expected to earn between $78,000 and $98,700." The judge found that defendant could earn $98,700 annually.

The judge also considered the parties' respective financial assets and liabilities and noted that defendant's current spouse has no legal obligation to support M.H. The judge found that the parties did not expect M.H. to contribute towards her college costs, and it was unlikely M.H. would qualify for financial aid. The judge stated that the parties had a "strong personal relationship" with M.H., and they would continue to share parenting time when M.H. is home from college.

The judge apportioned M.H.'s college costs to the parties in proportion to the amounts of income he imputed to them, with plaintiff responsible for sixty-two percent of the costs and defendant responsible for the remaining thirty-eight percent. The judge found that "there is no reason why [M.H.] cannot work part time during the academic year or work part time during the summer or other school breaks." The judge added that if M.H. chooses not to work, "she should at least apply for all available scholarships[,] loans and grants for which she qualifies" that are not need-based.

We are convinced there is sufficient credible evidence in the record to support the trial court's findings of fact and its decision to apportion sixty-two

percent of M.H.'s college costs to plaintiff and thirty-eight percent to defendant. The record supports the trial court's finding that the parties have the ability to pay their allocated shares of M.H.'s estimated college costs, and the parties' respective contributions will not exceed the amounts of income the court imputed to them.

Although the judge did not expressly find that plaintiff was underemployed, the judge did not err by imputing income to plaintiff because plaintiff failed to establish he was "earning at capacity." Storey v. Storey, 373 N.J. Super. 464, 474 (App. Div. 2004). Accord Elrom v. Elrom, 439 N.J. Super. 424, 436 (App. Div. 2015). In this regard, we note that plaintiff did not report any earned income on his 2016 Case Information Statement (CIS).

On appeal, plaintiff argues that the record does not support the judge's finding that he could find employment in one of the positions identified by Dr. Stein. The record shows, however, that plaintiff has a medical degree from Columbia Medical School and a master's degree from Harvard Business School. He also has experience working in the financial industry. The judge found that plaintiff's claim that he could not find employment in one of the positions identified by Dr. Stein was not credible. The record supports that finding.

Plaintiff argues that the trial court erred by accepting Dr. Stein's testimony, which he contends was an unsupported, net opinion. The net opinion rule bars an expert from providing conclusions that are not based on "factual evidence or similar data." Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 372 (2011) (citing Polzo v. Cty. of Essex, 196 N.J. 569, 583 (2008); Buckelew v. Grossbard, 87 N.J. 512, 524 (1981)). An expert must "give the why and wherefore" of his opinion, "rather than a mere conclusion." Polzo, 196 N.J. at 583 (quoting State v. Townsend, 186 N.J. 473, 494 (2006)).

Here, Dr. Stein's opinions were based on his interview of plaintiff, plaintiff's worker-trait profile, statistical data, and his forty years of experience as a vocational evaluator. Dr. Stein provided the "why and wherefore" of his opinions. His testimony was not a net opinion.

Plaintiff also contends that the trial court erred by failing to consider the taxes he would be required to pay on his imputed income. He asserts that after deducting taxes, the amount of annual income imputed to him will not be sufficient to pay his share of M.H.'s college costs. He claims he will have to cease paying rent and all personal expenses in order to afford his share of M.H.'s college costs.

21

Plaintiff's assertions are unavailing. As noted previously, the judge imputed annual income to plaintiff at the low end of the range of his potential earnings, which was from $160,000 to $250,000. Dr. Stein also testified that plaintiff could earn fringe benefits and bonuses, which could substantially increase his annual income. The judge did not err by finding that plaintiff is capable of paying his share of M.H.'s college costs.

Plaintiff further argues that defendant should have been required to pay all of M.H.'s college costs because defendant and her current spouse have accumulated a substantial amount of assets. He asserts that because defendant's current spouse provides for her living expenses, all of her imputed income can be used to fund M.H.'s college expenses.

Essentially, plaintiff is asserting that defendant's current spouse should bear some responsibility for paying for M.H.'s attendance at college. It is well-established, however, "that a current spouse has no obligation to support someone else's child." Hudson, 315 N.J. Super. at 584.

In addition, plaintiff argues the judge failed to account for the fact that in 2000, while she was working as a consultant at a law firm, defendant earned $120,000, along with a bonus. Defendant testified, however, that 2000 was the

22

only year in which she earned in excess of $100,000 and she typically earned less than that.

We have considered plaintiff's other arguments on the imputation of income and allocation of costs. We are convinced these arguments lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

We therefore conclude that the record supports the trial court's decision allocating sixty-two percent of M.H.'s college costs to plaintiff and thirty-eight percent to defendant.

C. Discovery.

Plaintiff argues that the judge erred by denying his motion for discovery. He contends the judge "deprived" him "of essential discovery proving defendant's ability to pay" M.H.'s college expenses, child support, and counsel fees.

On appeal, "we accord substantial deference to a trial court's disposition of a discovery dispute" and "will not ordinarily reverse" those decisions "absent an abuse of discretion or a judge's misunderstanding or misapplication of the law." Brugaletta v. Garcia, 234 N.J. 225, 240 (2018) (quoting Capital Health Sys., Inc. v. Horizon Healthcare Servs., Inc., 230 N.J. 73, 79-80 (2017)). "Discovery in post-judgment family motions is at the discretion of the court and

requires a preliminary threshold showing." <u>Welch v. Welch</u>, 401 N.J. Super. 438, 446 (Ch. Div. 2008).

The record shows that defendant provided plaintiff with her CISs and joint income tax returns. Thereafter, plaintiff filed a motion to compel defendant to provide answers to interrogatories concerning "the totality of [d]efendant's financial circumstances with her non-party spouse . . . including their income, lifestyle, assets, and liabilities, no matter in whose name titled."

The judge denied plaintiff's motion, finding that both parties had already exchanged their CISs and financial documents, and that "[a]nything beyond this . . . is not reasonably related to settling the issues that are before the [c]ourt." The judge decided that the information plaintiff sought was "tangential," "oppressive," and "unnecessary."

Plaintiff argues, however, that defendant's CISs were incomplete. He asserts that defendant omitted her current spouse's income, and failed to disclose certain marital assets or credit cards held in her spouse's name only. Plaintiff further argues that although defendant produced her joint income tax returns, she failed to include "her Schedules K-1 revealing capital accounts."

We are convinced that the trial court did not mistakenly exercise its discretion by finding that plaintiff had been provided with ample information

about defendant's finances and further discovery was not warranted. Plaintiff acknowledges that defendant has no income of her own. Furthermore, defendant's current spouse's income was reflected on the joint tax returns he and defendant filed for tax years 2008 through 2015. Those tax returns were provided to plaintiff during discovery.

Moreover, defendant's CISs disclosed the value of her individual assets and the marital assets she jointly held with her current spouse, including real estate and automobiles. The CISs also detailed the couple's monthly expenses and marital lifestyle.

As we have pointed out, since defendant's current spouse is not M.H.'s biological father, he is not obligated to contribute toward her college expenses unless he voluntarily assumes that responsibility. Hudson, 315 N.J. Super. at 584. There is no evidence that defendant's current spouse voluntarily assumed responsibility for supporting M.H.

As noted, plaintiff asserts that additional discovery was warranted because defendant did not produce copies of the K-1 schedules for her tax returns. However, plaintiff has not shown the information on these schedules was likely to have a significant bearing upon the court's ultimate decision. We therefore

reject plaintiff's contention that the trial court erred by denying his motion to compel discovery.

D.  Attorney's Fees.

Plaintiff argues that the trial court erred by denying his motion for attorney's fees.  Plaintiff contends the judge made "unsupported findings" and "failed to apply governing law."  In her cross-appeal, defendant argues that the court erred by denying her motion for counsel fees.  Defendant contends the judge should have awarded her counsel fees because he found plaintiff had not advanced his position in good faith.

N.J.S.A 2A:34-23 provides that when an application is made to the court regarding child support, the court may make an award of counsel fees, and in doing so, the court "shall consider the factors set forth in the court rule on counsel fees, the financial circumstances of the parties, and the good or bad faith of either party."  Moreover, Rule 5:3-5(c) requires the Family Part to consider nine enumerated factors when deciding whether to award attorney's fees.

"We will disturb a trial court's determination on counsel fees only on the 'rarest occasion,' and then only because of clear abuse of discretion."  Strahan v. Strahan, 402 N.J. Super. 298, 317 (App. Div. 2008) (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)).

Here, the judge considered the relevant factors under N.J.S.A. 2A:34-23 and the court rule. The judge found that plaintiff "did not get what he wanted" and did not act in good faith. The judge stated that the litigation costs, which exceeded $500,000, "were driven by the lack of cooperation between the parties and their inability to arrive at an amicable resolution--all to the detriment of their daughter."

The judge found that neither plaintiff nor defendant had the ability to pay the other party's attorney's fees. The judge noted that plaintiff had "deplet[ed] his assets to the point where his wife needed to volunteer at [his son's] school," and "defendant reached a point where her current husband has drawn the line" and "[t]here simply is not enough money to fund a war without impacting their family."

We are convinced that the judge did not err by denying the parties' motions for counsel fees. The judge's decision was not a mistaken exercise of discretion. The parties' arguments regarding counsel fees lack sufficient merit to warrant further comment. R. 2:11-3(e)(1)(E).

Accordingly, we affirm the trial court's order of June 19, 2017.

Appeal No. A-2120-17

We turn to plaintiff's appeal from the trial court's orders of December 1, 2017.  Plaintiff argues that the trial court did not have jurisdiction to grant defendant's motion because an appeal was pending from the June 16, 2017 order. He also contends the court erred by failing to make necessary findings of fact and conclusions of law.

A.  Defendant's Motion.

On September 19, 2017, defendant filed a motion to compel plaintiff to pay her $30,967.08, which she claimed was sixty-two percent of the cost incurred for M.H.'s attendance at Duke through March 2017.  Defendant also sought immediate reimbursement of $1987.99, which she said was sixty-two percent of M.H.'s college costs and expenses incurred between March 2017 and the end of the Spring 2017 semester.

In addition, defendant sought $702.99, which was allegedly plaintiff's share of M.H.'s airfare to Rome for the semester abroad beginning in the Fall of 2017.  The expenses for which defendant demanded reimbursement included charges that M.H. incurred for transportation, UPS, laundry, purchases at the

Apple store, payments to Duke for "damages," M.H.'s "flex account," and other miscellaneous expenses.

In her motion, defendant also asked the court to clarify its prior decision and determine that: (1) plaintiff's share of M.H.'s college costs and related expenses is not subject to a $73,000 per year cap; and (2) M.H.'s college costs and related expenses include, but are not limited to, "transportation, clothing, entertainment, toiletries and sundries, laundry, dorm/apartment set up, shipping and storage of personal effects, etc."

Plaintiff opposed defendant's motion and argued that he had already contributed more than his allocated share of the costs. He cross-moved for an order denying the relief sought and for an award of attorney's fees.

Among other things, plaintiff asserted that he could not afford to contribute to M.H.'s extravagant lifestyle expenses, which he said included "hundreds of Uber, taxi, restaurant, and similar charges." He also asserted that defendant's request for "clarification" was tantamount to an untimely motion for reconsideration, and that the court's allocation order was "crystal clear as written."

The trial court did not conduct oral argument on the motion and cross-motion. On December 1, 2017, the judge entered two orders. The first order

granted defendant's motion and directed plaintiff to pay defendant the amounts she claimed. The order states that M.H.'s college costs and related expenses are not "capped" at $73,000 per year, and that the costs are like the costs included in the examples identified in Jacoby, 427 N.J. Super. at 109. In the second order, the judge denied plaintiff's cross-motion.

On appeal, plaintiff argues that the trial court erred by failing to provide findings of fact and conclusions of law for his orders. We agree.

Rule 1:7-4(a) states that "[t]he court shall, by an opinion or memorandum decision, either written or oral, find the facts and state its conclusions of law thereon in all actions tried without a jury, on every motion decided by a written order that is appealable as of right." "Naked conclusions do not satisfy the purpose of R. 1:7-4." Curtis v. Finneran, 83 N.J. 563, 569-70 (1980). Moreover, "[m]eaningful appellate review is inhibited unless the judge sets forth the reasons for his or her opinion." Salch v. Salch, 240 N.J. Super. 441, 443 (App. Div. 1990).

Here, the judge did not issue any oral or written findings of fact or conclusions of law on defendant's motion for reimbursement. The judge ordered plaintiff to pay defendant $33,658.06. We cannot discern from the record

A-5304-16T1

whether the judge analyzed defendant's proofs or determined that they adequately supported her reimbursement request.

The judge did not address plaintiff's contention that some of the expenses for which defendant sought reimbursement were extravagant. The judge did not analyze the nature of the expenses, determine whether the expenses were essential or non-essential, or make any findings as to the appropriateness or reasonableness of the costs.

Furthermore, the judge did not clarify the expenses that are subject to apportionment. The judge merely stated on the order that they include expenses like those identified in Jacoby. In Jacoby, the court set forth a non-exhaustive list of expenses that are "illustrative of costs associated with supporting a college experience." 427 N.J. Super. at 121-22.

On remand, the trial court should identify with specificity the expenses that are subject to apportionment. The court should determine whether the costs for which defendant seeks reimbursement are essential or non-essential, and whether they are reasonable and appropriate. The court also should explain the reasons for denying plaintiff's cross-motion for counsel fees.

We therefore reverse the trial court's orders of December 1, 2017, and remand defendant's motion and plaintiff's cross-motion to the trial court for

further proceedings on the motions in conformity with this opinion. The court shall make the findings of fact and conclusions of law required by <u>Rule</u> 1:7-4.

In view of our decision, we need not address plaintiff's contention that the trial court did not have jurisdiction to entertain defendant's motion.

Affirmed on the appeal and cross-appeal in A-5304-16; reversed and remanded to the trial court for further proceedings in A-2120-17. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION