719 A.2d 211 (1998)
315 N.J. Super. 577
Norma J. HUDSON (now known as Norma J. Drago), Plaintiff-Appellant,
v.
Robert C. HUDSON, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued September 29, 1998.
Decided November 5, 1998.
*212 Donald F. Scholl, Jr., Flemington, for plaintiff-appellant (Reed and Scholl, attorneys; Mr. Scholl, of counsel and on the brief).
Robert C. Hudson, defendant-respondent, pro se.
Before Judges KESTIN, WEFING and CARCHMAN.
The opinion of the court was delivered by CARCHMAN, J.A.D.
This case requires us to examine the extent to which a current spouse's income may be considered in allocating a child's college expenses between the former spouse-father and the mother of the child. In determining the allocation here, the motion judge, presumably relying on our decision in Ribner v. Ribner, 290 N.J.Super. 66, 674 A.2d 1021 (App.Div.1996), simply added the income of the mother and her current spouse together, compared this total with that of the former spouse and calculated that each parent was responsible for one-half of the total college cost. Additionally, on a motion for reconsideration, *213 the judge concluded that the former spouse's share of college expenses included child support. Plaintiff Norma Drago (formerly Norma Hudson), the child's mother, appeals, and we now reverse. We conclude that it was error to combine the two incomes to establish plaintiff's share of college expenses and to hold that such contribution included child support.
The relevant facts are not in dispute. Plaintiff and defendant Robert C. Hudson were divorced by judgment dated May 6, 1988. After the divorce, plaintiff married her current spouse, Ronald Drago (Drago). At the time of the divorce, the parties' son Jeremy, then approaching his tenth birthday, lived in a shared custody arrangement. Custody was changed on two subsequent occasions with Jeremy residing with each parent for short periods of time. In 1996, Jeremy went to live with his mother, and child support was fixed at $540 per month. During the post-divorce period until his later years in high school, Jeremy manifested a number of adolescent problems, but in his senior year of high school, Jeremy changed direction and focused on religious activities, ultimately pursuing a college education. Jeremy's efforts were rewarded as he was offered admission to Messiah College.
In response to the financial burden imposed by Jeremy's college education, the parties unsuccessfully attempted to negotiate the issues of child support and college contribution. Plaintiff then moved for an order which sought, among other things, to compel defendant to pay college expenses. Defendant, in the interim, entered into a consent order and agreed to continue child support at its present level until September 1997.
Both parties presented updated Case Information Statements (CIS), and, at the request of defendant, Drago supplied a certification of his earnings. There was no dispute as to the income figures presented. Defendant argued that in determining the relative obligations of the parties, the court should apply Ribner and consider Drago's income in determining plaintiff's contribution to college expenses. Defendant relied on the language of that decision that "funds given by the [current] spouse to plaintiff constituted income which was not exempt from consideration in determining plaintiff's support obligation to her children." Id. at 75, 674 A.2d 1021.
The judge did not cite Ribner but adopted defendant's arguments in determining the issues before him. We quote his findings:
Pursuant to the financial documents submitted to Court, the Court finds the following. Plaintiff is employed by the Communication Workers of America and based upon plaintiff's 1996 W-2 income statement, plaintiff earns a net weekly income of $491. Additionally, the Court notes the plaintiff has remarried. As such, theCourt finds it fair and reasonable to consider the family income necessary to meet all expenses when considering the proper allocation of college expenses. Her husband's pay stubs do not clearly indicate his employer. Nevertheless, his pay stub which this Court analyzed, the one for June 18th, shows that as of June 18th, he has earned gross income of $17,289.60. The period of time for that paycheck indicates that 24.7 weeks have expired, giving a gross weekly income of $699. From this figure, personal deductions for medical, dental, wage garnishment[1] were considered as were federal and state taxes. Total weekly deductions for these items equal $365. When the deductions were subtracted from the $699, it gives a net income of $334, coupled with Mrs. Drago's income of $491, it gives $825 of weekly income or $3,547.50 per month by way of monthly income. The interesting fact when looking at that $3,547.50 and comparing that to [the] figure set forth on Mrs. Drago's case information statement, it indicates that she has monthly expenses of $5,721. That comparison was interesting and noted in dealing with the analysis.
Defendant is employed at AT & T Corporation. And based upon his 1996 W-2 income statement, defendant earns a net *214 weekly income of ... $796. The parties' combined net income, inclusive of Mr. Drago's equals ... $1,621. In looking at a percentage share of these incomes, they are 51 percent as opposed to 49 percent, essentially 50 percent each. Therefore, defendant is ordered to be responsible ... for one-half of Jeremy's, in my calculations, $13,113 or $6,556, the plaintiff responsible for the balance. In essence, it's a 50-50 sharing of responsibility for college expenses. Based upon the fact that the defendant is contributing towards Jeremy's tuition, room and board for approximately nine months of the year and that Jeremy will be attending college, that his child support should terminate as of September 1, 1997 as indicated in the consent order.

[emphasis added]
The judge signed an order memorializing his decision on August 15, 1997. While we conclude that his methodology was in error, we hold that a current spouse's income may be relevant in determining a parent's ability to contribute to college expenses.
In Newburgh v. Arrigo, 88 N.J. 529, 443 A.2d 1031 (1982), the Supreme Court identified the factors to be considered in evaluating a claim for college contribution. Among these factors was "the financial resources of both parents." Id. at 545, 443 A.2d 1031. Our analysis of how to assess and measure these resources begins with a review of Ribner, recognizing that Ribner is not the controlling authority in this case to the extent that it dealt with an increase in child support rather than college contribution. Because there seems to be some rather widespread confusion about the meaning and applicability of Ribner, however, we will address that opinion here.
In Ribner, plaintiff remarried and her new husband had income and assets which affected both her standard of living and her ability to meet current expenses. We suggested alternative considerations of a current spouse's income. We first noted that such income is relevant in determining whether there was "good cause" for disregarding or modifying the Child Support Guidelines. R. 5:6A; Ribner, supra, 290 N.J.Super. at 74, 674 A.2d 1021. Second, if the guidelines do apply, we concluded that income received from the current spouse is to be included in the parent's income in a guidelines calculation of the support obligations of the parties. We expressed the caution that in making such a financial analysis, a "plaintiff's spouse [has no] duty to support her children from a prior marriage." Id. at 75, 674 A.2d 1021. Thus any analysis under Ribner, whether applying the guidelines or not, requires a careful balance between consideration of the current spouse's income and not obligating that spouse to support a parent's child from a former marriage. Superimposed on this balance is the consideration that "[c]hildren are entitled to have their `needs' accord with the current standard of living of both parents, which may reflect an increase in parental good fortune." Zazzo v. Zazzo, 245 N.J.Super. 124, 130, 584 A.2d 281 (App.Div.1990), certif. denied, 126 N.J. 321, 598 A.2d 881 (1991).
Recent changes in the Child Support Guidelines have affected the viability of Ribner. On September 1, 1997, subsequent to the order under review here, the new Child Support Guidelines became effective. The new guidelines exclude from consideration of a parent's gross income, "income from other household members" including a current spouse who is "not legally responsible for the support of the child for whom support is being established." Pressler, Current N.J. Court Rules, Appendix IX-B, pp.2031-32. To the extent that the second prong of Ribner mandates an inclusion of the income of a current spouse in calculating a parent's income under the Guidelines, Ribner has been superseded by the new guidelines. However, the exclusion of the current spouse's income does not alter the opportunity to disregard the new guidelines if an injustice would result in a particular case. "The determination of whether good cause exists to disregard or adjust a guideline-based award in a particular case shall be decided by the court." Id. at Appendix IX-A, p.2005.
Despite the change in the Child Support Guidelines and its implications for the application of Ribner, that case still retains vitality as we conclude that a current *215 spouse's income is still relevant in the determination of the "financial resources of a parent" and the impact of such resources on determining a parent's contribution to college expenses. See Alan Cornblatt, Who Should Pay the Price for Higher Education? Newburgh v. ArrigoA Critical Analysis. 184 N.J. Law 21, 22 (May 1997) ("In 1996, the court found that the monetary support given by a step-father to his wife should be considered to be income to the wife when judicially setting the child support obligation, [citing Ribner, supra ]. Logically, this would extend to the wife's college obligation toward the children of her prior marriage."). A court may consider a current spouse's income to the extent that it provides a fiscal basis for meeting current living expenses or long-term financial obligations which, absent such income, would be borne by a parent individually.
A court cannot consider issues such as college contribution in a vacuum and disregard substantial economic benefits and financial resources inuring to the benefit of a parent as a result of a remarriage. But any analysis must remain focused on the underlying premise that a current spouse's contribution to the household does not create an obligation on such spouse to share in his or her spouse's parental responsibility for college expenses. The limit of a parent's college contribution should not exceed that parent's income whether earned, unearned or imputed. See, e.g., Connell v. Connell, 313 N.J.Super. 426, 712 A.2d 1266 (App.Div.1998) (imputing income to a parent from monies received from an inheritance and invested in non-income producing asset); cf. Dorfman v. Dorfman, N.J.Super. (App.Div.1998). By the application of this rule, we honor the principle that a current spouse has no obligation to support someone else's child while accounting for the reality that the current spouse may provide economic resources to the household.
In determining defendant's contribution to college expenses, the judge included defendant's child support obligation in his college contribution. That, too, was error. Child support and contribution to college expenses are two discrete yet related obligations imposed on parents. See, e.g., Beck v. Beck, 239 N.J.Super. 183, 190, 570 A.2d 1273 (suggesting that a court must consider whether the payment of substantial tuition should result in the reduction of child support (unallocated alimony)). The relationship between the two is not fixed but depends on the facts of each case. See, e.g., Black v. Walker, 295 N.J.Super. 244, 253, 684 A.2d 1011 (App.Div.1996) (affirming order requiring former spouse's estate to pay 90% of child's college costs and child support for months child not in school); Blum v. Ader, 279 N.J.Super. 1, 4-5, 652 A.2d 176 (App.Div.1994) (remanding to trial court with directions to enter an order continuing child support and apportioning education expenses for eighteen-year-old college student); Avery v. Avery, 209 N.J.Super. 155, 162-163, 507 A.2d 242 (App.Div.1986) (affirming order requiring former spouse to contribute 65% of college expenses for oldest child and reinstating separation agreement requiring child support for all three children). Here, no consideration was given to Jeremy's expenses which remain plaintiff's obligation such as fixed shelter costs and food when Jeremy is home. Jeremy attends school nine months per year imposing an obligation on plaintiff to support him for the additional three months. In addition, Jeremy indicated that he would be home on numerous weekends during the school year. Moreover, while the judge observed that Jeremy is capable of earning income, we do not deem that to be a substitute for defendant's obligation to contribute to Jeremy's support. In sum, the interrelationship between the college contribution and child support must be reconsidered by the judge on remand. See Blum v. Ader, supra.
We note that plaintiff requested a plenary hearing. Our review of the record does not identify any fact that is in serious dispute. The parties agree on the financial information exchanged, and there is no suggestion of either party withholding relevant information. If the judge, on remand, determines that he requires further information necessitating *216 a hearing, he may order such a hearing, but we decline to mandate such a result.
We reverse and remand for further proceedings in accordance with this opinion.
NOTES
[1] The wage garnishment represented child support payments by Drago to his former wife for their four children.