*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

### ENTRY ORDER

SUPREME COURT DOCKET NO. 2012-262

MARCH TERM, 2013

| | |
|---|---|
| Christopher M. Wurster | } APPEALED FROM: |
| | } |
| | } Superior Court, Rutland Unit, |
| v. | } Family Division |
| | } |
| | } |
| Karen Wurster-Sinex | } DOCKET NO. 488-10-06 Rddm |

Trial Judge: Nancy S. Corsones

In the above-entitled cause, the Clerk will enter:

Mother appeals an order of the superior court, family division, determining that her ex-husband has no obligation beyond his payment of child support to contribute to the college expenses of the parties' daughter. We affirm.

The unchallenged findings of the trial court reveal the following facts. The parties were divorced in New Jersey in 1994 when their daughter was two years old. The New Jersey divorce order acknowledged the parties' agreement: (1) to consult with each other on all major issues, and share equal access to all pertinent information and records, regarding the health, education, and welfare of their daughter; and (2) to cooperate with each other to the fullest extent possible to foster a loving and respectful relationship between them and their daughter, and not to say anything likely to alienate their daughter's affections toward either parent. The order also stated that the parents desired to give their daughter the best education available, but at the time of the order had made no provision for her post-high-school educational needs and stated that the parties would discuss that matter at the appropriate time. Following the divorce, mother moved to Vermont and remarried.

For the first several years after the divorce, father and daughter enjoyed a very close relationship due in part to what the trial court termed father's "extraordinary effort" to maintain a strong bond with his daughter. Father, who lived out of state, purchased a condominium in Vermont, where mother had relocated with the parties' daughter and resided with her husband, so that he could see their daughter every other weekend.

The relationship between father and daughter soured, however, sometime in 2006 after a conflict ensued between stepfather and father over payment of the cost of her attending a private boarding school. When the parties' daughter was fourteen years old, mother unilaterally enrolled her in a private boarding school without consulting with father, in direct violation of the divorce order. Mother informed father of their daughter's enrollment only after the fact. The stepfather, whom the court found to be wealthy, initially paid the boarding school tuition and asked father to

contribute to the costs.  When the interactions between father and stepfather became contentious, father stopped making direct contributions and instead petitioned the court to increase his monthly child support from $866 to $1498 to compensate for the increased expenses resulting from the parties' daughter attending boarding school and to avoid further negotiation with stepfather.

In June 2007, the stepfather sued father for breach of contract, alleging that he had broken his promise to share equally in the costs of the private boarding school.  The stepfather initially prevailed in the superior court, but this Court remanded the matter for additional factfinding, see Sinex v. Wurster, No. 2009-048, 2009 WL 2901866 (Vt. September 4, 2009) (unpub. mem.), http://www.vermontjudiciary.org/d-upeo/upeo.aspx, and later upheld the trial court's conclusion that no enforceable contract existed between the stepfather and father, see Sinex v. Wurster, No. 2010-407, 2011 WL 4977680 (Vt. June 1, 2011) (unpub. mem.), http://www.vermontjudiciary.org/d-upeo/upeo.aspx.  Mother involved the parties' daughter in the dispute, resulting in a complete breakdown of the relationship between father and daughter.

Unbeknownst to father, the parties' daughter applied to, was accepted, and entered the freshman class at Smith College in the fall of 2010.  Smith College has an annual cost of over $55,000.  At the end of the first semester, the stepfather asked father to pay sixty percent of the cost of his daughter attending Smith College, in addition to his child support obligation.  Father declined, and in February 2011, mother moved to modify the parties' divorce order to determine father's financial responsibilities to contribute towards their daughter's college costs.  Following an evidentiary hearing, the trial court applied controlling New Jersey law and concluded that father was not required to make any contribution to his daughter's college costs beyond his monthly child support payments.

On appeal, mother does not dispute any of the trial court's findings but rather argues that the court erred in applying New Jersey law to reach its decision.  Specifically, mother argues that the court erred by: (1) weighing her and her husband's combined income, rather than only her income, against father's income; (2) taking into account father's child support payments; and (3) giving too much weight to the estrangement between father and daughter.  We find no error.

The parties agree that New Jersey law applies.  In Newburgh v. Arrigo, 443 A.2d 1031, 1038-39 (N.J. 1982), the New Jersey Supreme Court set forth a non-exhaustive list of twelve factors that a trial court should consider in evaluating a claim for contribution toward the cost of higher education.  Six years after Newburgh, the New Jersey legislature "essentially approved those criteria when amending the [child] support statute."  Gac v. Gac, 897 A.2d 1018, 1023 (N.J. 2006) (citing 2A N.J.S.A. § 34-23(a)).  "Thus, a trial court should balance the statutory criteria . . . and the Newburgh factors, as well as any other relevant circumstances, to reach a fair and just decision whether and, if so, in what amount, a parent or parents must contribute to a child's educational expenses."  Id.  Half of the Newburgh factors concern the financial commitment being undertaken in relation to the parents' and child's financial resources; the other factors relate to the goals of the parents and child, the relationship of the child to the parents, and the interrelationship between the type of education and the child's needs, interests, and commitment. Moss v. Nedas, 674 A.2d 174, 176 (N.J. Super. Ct. App. Div. 1996).  Because of "the subjectivity and imprecision of this multi-factor analysis, which implies substantial legal

discretion in the judge in implementation," the trial court's decision will not be disturbed absent a demonstrated abuse of discretion or legal error. Id. at 178.

In this case, the court applied the Newburgh factors, finding that: (1) had they stayed together, both parents would have supported their daughter throughout college; (2) father has the ability to contribute to his daughter's college education, and in fact is doing so indirectly through child support; (3) father's ability to pay is dwarfed by stepfather's ability to pay; (4) the parties' daughter is an excellent and committed student; (5) the daughter chooses not to work because there is no financial need due to her stepfather's support; and (6) father and daughter have had no meaningful relationship for the past several years because of mother's conduct in involving the child in the dispute between the stepfather and father. The court also emphasized the fact that father was never consulted about his daughter's college selection process until after she had completed her first semester at an expensive private school. Based on consideration of these and other circumstances, the court concluded that father should not be required to contribute to his daughter's college costs beyond his child support obligation.

Read fairly, the trial court's decision not to require father to pay for his daughter's college costs rests principally on three factors: (1) mother's access to financial resources through the stepfather; (2) the estrangement between father and daughter; and (3) mother's failure to include father ahead of time in decisions regarding their daughter's choice of college. We conclude that the trial court's decision is well within its discretion under New Jersey law. Regarding mother's access to the stepfather's assets, the Newburgh factors include consideration of the "financial resources" of the parents. 443 A.2d at 1038. Although a current spouse's income "does not create an obligation on such spouse to share in his or her spouse's parental responsibility for college expenses," that income "is still relevant in the determination of the financial resources of a parent and the impact of such resources on determining a parent's contribution to college expenses." Hudson v. Hudson, 719 A.2d 211, 215 (N.J. Super. Ct. App. Div. 1998) (internal quotations omitted). "A court cannot consider issues such as college contribution in a vacuum and disregard substantial economic benefits and financial resources inuring to the benefit of a parent as a result of a remarriage." Id. Accordingly, "[a] court may consider a current spouse's income to the extent that it provides a fiscal basis for meeting current living expenses or long-term financial obligations which, absent such income, would be borne by a parent individually." Id.

Here, the trial court found that the stepfather married mother when the parties' daughter was very young, had always treated his stepdaughter as an equal with his biological children, and had supported her at a standard of living far above what she would have had if she had lived with father. The court further found that he remains committed to paying his stepdaughter's educational costs, as indicated by mother's testimony at trial that he is paying those costs as part of mother's and stepfather's separation agreement.* The court also found that although mother is no longer living with the stepfather, he pays her $3000 per month to manage his Vermont property and provides her with her own home, car, and medical insurance at no expense to her. The trial court was not required to ignore the fact that the stepfather was committed to supporting the education of the parties' daughter, who he had treated as his daughter since she was a young

---

* Mother and the stepfather had not been living together for some period at the time of the motion hearing, but had not legally separated or divorced at that point.

child, and that mother had access to his financial resources with regard to her daughter's college education.

To be sure, this factor in isolation would not necessarily have relieved father of his obligation to support his daughter's college education. But the trial court considered it in conjunction with the fact that father and daughter were estranged and father was not made part of the decision to send her to an expensive private college. Mother's failure to include father in their daughter's college decision and to notify him of her decision before she attended school violated the provisions in the divorce order cited by the trial court and thus weighed heavily against requiring him to contribute to the college costs. As the New Jersey Supreme Court stated in Gac,

> The failure of both [mother] and [daughter] to request that [father] assist in paying [daughter]'s educational expenses at a time that would have enabled [father] to participate in [daughter]'s educational decision as well as to plan his own financial future weighs heavily against ordering him to contribute to her educational expenses after her education was completed.
>
> Obviously, the factors set forth in Newburgh and reaffirmed today contemplate that a parent or child seeking contribution towards the expenses of higher education will make the request before the educational expenses are incurred. As soon as practical, the parent or child should communicate with the other parent concerning the many issues inherent in selecting a college. At a minimum, a parent or child seeking contribution should initiate the application to the court before the expenses are incurred. The failure to do so will weigh heavily against the grant of a future application.

897 A.2d at 1025.

The trial court's opinion is also supported by the long-term absence of a meaningful relationship between father and daughter, which the court attributed to mother's conduct. Cf. Moss, 674 A.2d at 178 (upholding trial court's refusal to require ex-husband to contribute to their daughter's college costs based, in part, on "the absence of any meaningful relationship" between father and daughter). The trial court found that mother had poisoned the relationship between father and daughter, to the point where daughter considered father merely a "wallet full of cash." The trial court made it clear that neither mother nor the parties' daughter wanted any part of father other than his money, and in fact father and daughter had been estranged for years before she went to college. We find unavailing mother's argument that the parties' daughter is being penalized for any fault on mother's part for the strained relationship between father and daughter. Apart from the fact that the daughter is not being penalized, the New Jersey Supreme Court in one case has not required college contributions even from a parent who was responsible for the estrangement when he was not made part of the college decision. Gac, 897 A.2d at 1024-25.

4

Nor do we find any merit in mother's argument that the trial court erred by considering father's payment of child support. The trial court ordered father to continue to pay $1498 per month in child support, but did not rely in any significant way on that obligation in making its decision. In any event, under New Jersey law, "[c]hild support and contribution to college expenses are two discrete yet related obligations imposed on parents." Hudson, 719 A.2d at 215; see Gac, 897 A.2d at 1023 (requiring trial court to balance statutory child support criteria in addition to Newburgh factors and other relevant circumstances in determining obligation to pay college expenses). "The relationship between the two is not fixed but depends on the facts of each case." Hudson, 719 A.2d at 215. Here, as the trial court noted, father himself petitioned that his child support obligation be raised to help pay for his daughter's prep school education. The trial court specifically continued that obligation, which was based in part on father's desire to support his daughter's educational needs. We find no error. The circumstances of this case fully support the trial court's decision.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
John A. Dooley, Associate Justice

_____
Marilyn S. Skoglund, Associate Justice

5