**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0268-24
A-0103-25

CLARENCE SEALS, JR.,

    Plaintiff-Respondent,

v.

MIA MOORE SEALS,

    Defendant-Appellant.

_____

> Argued March 10, 2026 – Decided April 6, 2026
>
> Before Judges Susswein and Augostini.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FM-07-1981-12.
>
> Mia Moore Seals, appellant, argued the cause on appellant's behalf.
>
> Clarence Seals, Jr., respondent, argued the cause on respondent's behalf.

PER CURIAM

In these back-to-back appeals, which we consolidate for the purpose of issuing a single opinion, defendant Mia Moore Seals appeals from two orders: (1) August 9, 2024, emancipating the parties' younger son, O.S.,[1] retroactive to March 9, 2021, and terminating plaintiff Clarence Seals, Jr.'s child support obligation, and (2) July 18, 2025, reducing plaintiff's alimony obligation to reimburse him for the overpayment of child support and college tuition.

Following a multi-day plenary hearing, the family court emancipated O.S., a full-time college student, finding that he waived his right to plaintiff's financial support by refusing to attend court-ordered therapy with his father and keeping him out of his life. In considering whether O.S. had "moved beyond the sphere of influence and responsibility," the court erred by not "'critical[ly] evaluat[ing] . . . [O.S.'s] need[s], interests, and independent resources, the family's reasonable expectations, and the parties' financial ability'" and other relevant factors before emancipating O.S. and terminating plaintiff's support obligation. Llewelyn v. Shewchuk, 440 N.J. Super. 207, 216 (App. Div. 2015) (quoting Dolce v. Dolce, 383 N.J. Super. 11, 18 (App. Div. 2006)). The court mischaracterized O.S.'s refusal to attend therapy as a "waiver" of support and relied primarily on this factor in making its determination.

---

[1] We refer to the parties' younger son by initials to protect his privacy interests.

A-0268-24

Therefore, we reverse the court's emancipation determination and remand for further proceedings consistent with this opinion. Furthermore, because the court's July 18, 2025 order reducing plaintiff's alimony obligation to reimburse him for the overpayment of child support and tuition hinged on the court's emancipation determination, we vacate that order as well. Depending upon the outcome of the family court's emancipation decision, for which we take no position, the court shall consider anew whether plaintiff is entitled to reimbursement for any overpayment of either child support or college costs.

I.

A.

The parties are well-versed in the facts of their case; therefore, we need only summarize those facts relevant to the issues now before us. The parties were married for approximately thirty years and had two children: the oldest child born in 1996[2] and the youngest child, O.S., born in 2001. The parties were divorced on June 29, 2018, after a lengthy trial. The family court issued a comprehensive written decision addressing all issues, including child support, college expenses, and alimony. We affirmed the final judgment of divorce

---

[2] At the time of the prior appeal, the oldest child had graduated from college and is emancipated. Seals v. Seals, No. A-5865-17 (App. Div. February 10, 2021) (slip op. at 3). He is not part of this appeal.

A-0268-24

(JOD) in part and remanded only on the allocation of equitable distribution of credits and debits. Seals, slip op. at 14.

Per the JOD, the parties shared joint physical and legal custody of O.S. with a fifty-fifty shared parenting schedule. The JOD, later amended, established plaintiff's weekly child support obligation at $266.14. As for college expenses, the JOD stated that the parties were to "share the costs of O.S.'s college education in proportion to their income at the time." In a subsequent order entered on January 2, 2020, plaintiff was directed to pay 67% of O.S.'s college costs with defendant paying 33% of those expenses.

The JOD also provided for open durational alimony from plaintiff to defendant of $3,000 monthly. At the time of their divorce, plaintiff's employment provided for discretionary bonuses. The court found that "in the event that [p]laintiff receives a bonus, he is to pay 20% of the net amount to [d]efendant in addition to the fixed amount." The court also directed plaintiff to maintain $750,000 in life insurance to secure his financial obligations to his former spouse and child. Once O.S. graduated from college, the life insurance coverage could be reduced to $500,000.

4

## B.  Present Litigation

In June 2019, O.S. graduated from high school.  He was admitted to Michigan State University (MSU) and started college in August 2019.  Although there were brief periods when O.S. did not visit his father, for the most part, their shared parenting arrangement remained intact until O.S. left for college.  O.S.'s tuition was to be paid in accordance with the JOD and income percentages in the January 2, 2020 order.  However, because defendant did not pay her 33% share of the MSU expenses, plaintiff paid the full amount of tuition to avoid any disruption in O.S.'s college plans.

Plaintiff then filed a motion seeking to compel defendant to reimburse him for her share of the college costs.  On August 7, 2020, the court found defendant in violation of litigant's rights and reduced plaintiff's alimony obligation to $2,175.70 per month to reimburse him for defendant's share of O.S.'s college costs.

On August 10, 2020, O.S. left defendant's residence following his parenting time and never returned.  Plaintiff has not seen O.S. since this date.

O.S. did not return to MSU.  Instead, he enrolled at Rutgers University.  Plaintiff stated that he only learned of this decision on August 6, 2020, from a letter defendant sent to the court, in part, advising that O.S. would not be

5

A-0268-24

returning to MSU but rather, transferring to a "New Jersey college" in the fall because defendant's share of O.S.'s MSU tuition was "impossible for [her] to pay." In a letter dated August 7, 2020, O.S. advised the court:

> Because I know that how my college expenses will be paid is going to be decided by you, and important decisions about my life have been made by courts for many years, I am going to ask you to consider my needs.
>
> I have seen my mother struggle financially for many years. We lost our house. My brother has a lot of debt for his college education.
>
> I talked with my father about this situation and how I will not be attending [MSU] when my mother cannot pay what is being ordered. I will not do it and cause more suffering. I have applied to and will attend a more affordable college in New Jersey.

In October 2020, plaintiff filed a notice of motion, seeking to emancipate O.S., or alternatively, to be relieved of his responsibility to contribute toward his son's college costs. On December 30, 2020, the family court ordered plaintiff and O.S. to "participate in counseling by February 26, 2021 to repair their relationship and discuss O.S.'s options for his continued college education." The court further provided that should O.S. "fail[] to participate in counseling . . . the court would consider this fact in making a determination whether or not he should be emancipated."

A-0268-24

On March 6, 2021, O.S. advised the counselor not to schedule any more therapy sessions for him and his father because O.S. would not be attending. O.S. expressed concern that plaintiff would "sue my mother or me in court for any cancellation charges or fees incurred."  As a result of O.S.'s unwillingness to participate in therapy, the court scheduled a plenary hearing to determine whether O.S. should be emancipated.

Over the course of eight non-consecutive days, the court conducted a plenary hearing to address whether O.S. should be emancipated and other related issues: tuition payments, child support, life insurance, plaintiff's bonus and counsel fees.  The parties and O.S. testified.

In a written opinion, the court detailed its credibility and factual findings and concluded that O.S. voluntarily left "[p]laintiff's sphere of influence" and as a result, "voluntarily waived his right of support from [p]laintiff, whether it be college tuition or child support."  In terms of college tuition, the court recognized that the Newburgh[3] factors generally must be considered.  However, in this case, the court found that consideration of all the factors would not be necessary.  Because O.S.'s college tuition had been covered by student loans and

---

[3] Newburgh v. Arrigo, 88 N.J. 529, 545 (1982).

A-0268-24

grants, plaintiff's contribution would be zero. The court determined that "[t]he other [Newburgh] factors, besides factor [three], therefore d[id] not apply." The court granted plaintiff's motion to emancipate O.S. retroactively to March 9, 2021, "the date of the filing of [] [p]laintiff's [n]otice of [m]otion."[4]

In its August 9, 2024 order, the family court granted plaintiff credit for tuition he paid to Rutgers and for child support paid from March 9, 2021 to May 12, 2024, totaling $49,387.37. To effectuate repayment, the court reduced defendant's alimony obligation from $3,000 to $1,628.13 a month until this credit was paid in full. In a September 16, 2024 amended order, the court, in part, permitted plaintiff to remove O.S. from his medical/dental coverage and cancel the life insurance policies he was required to maintain to secure his support obligations.

Defendant raises the following points in her appeal from the August 9, 2024 order:

> POINT 1
> THE COURT DENIED A FAIR TRIAL REQUIREING
> REVERSAL AND REMAND FOR RETRIAL IN A
> NEW VENUE.

---

[4] The record reflects that the motion to emancipate the child was returnable on March 9, 2021, and had been initially filed on October 12, 2020. It is unclear whether defendant filed a second motion to emancipate after O.S. refused to attend therapy in accordance with the December 30, 2020 order.

POINT A
THE COURT WAS NOT IMPARTIAL AND FAILED TO RULE ON RELIEF CLAIMS, DENYING A FAIR TRIAL.

POINT B
THE COURT DID NOT ADHERE TO THE CODE OF JUDICIAL CONDUCT, SPECIFICALLY I.A. A JUDGE SHOULD OBSERVE HIGH STANDARDS OF CONDUCT SO THE INTEGRITY AND INDEPENDENCE OF THE JUDICIARY MAY BE PRESERVED, CANON 2.A. A JUDGE SHOULD ACT AT ALL TIMES IN A MANNER THAT PROMOTES PUBLIC CONFIDENCE IN THE INTEGRITY AND IMPARTIALITY OF THE JUDICIARY, 3.A(3) A JUDGE SHOULD BE PATIENT, DIGNIFIED AND COURTESOUS TO LITIGANTS, AND 3.A (4)A JUDGE SHOULD BE IMPARTIAL AND NOT DISCRIMINATE BECAUSE OF RACE, COLOR, RELIGION, AGE, SEX, SEXUAL ORIENTATION, NATIONAL ORIGIN, LANGUAGE, MARITAL STATUS, SOCIOECONOMIC STATUS OR DISABILITY, AND 3.A.(7) A JUDGE SHOULD DISPOSE PROMPTLY OF THE BUSINESS OF THE COURT

POINT 2
THE COURT MISAPPLIED LAW BY ESTABLISHING NEW FACTORS FOR EMANCIPATION MAKING JOINT THERAPY AND AN INTERESTED PARTY'S SATISFACTION WITH THERAPY FACTORS AND FINDING CHILDREN CAN "WAIVE" THEIR RIGHT TO SUPPORT

9                                    A-0268-24

POINT 3

THE COURT COMMITTED MANY MATERIAL ERRORS AND REFUSED TO CORRECT, EVEN PARTIALLY, UNTIL THE NOTICE OF APPEAL WAS FILED, UNDERMINING PUBLIC CONFIDENCE IN THE JUDICIARY AND WITH THE COMPETENCE AND INTEGRITY OF THE COURT.

POINT 4

THE COURT ERRED BY NOT GRANTING CHANGE OF VENUE UNDER LAW

POINT 5

THE COURT ERRED BY NOT RECUSING

Defendant raises the following points in her appeal from the July 18, 2025 order:

POINT 1.A  THE COURT ERRED BY SUSPENDING ALIMONY TO REPAY CHILD SUPPORT AND COLLEGE TUITION

POINT 1.B  ALIMONY REDUCTION VIOLATED DEFENDANT'S PROCEDURAL DUE PROCESS RIGHTS

POINT 2  RETROACTIVE EMANCIPATION DOES NOT AUTHORIZE ALIMONY MODIFICATION

POINT 3  THE COURT FAILED TO CONDUCT REQUIRED LEPIS ANALYSIS

POINT 4  THE COURT MADE AN UNAUTHORIED MODIFCATION OF THE AMENDED JUDGMENT OF DIVORCE

10

POINT 5 THE COURT VIOLATED PUBLIC POLICY

Many of defendant's points lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).  That conclusion is based on our review of the trial record, and the court's even-handed and impartial application of the rules of evidence and the manner in which the court conducted the proceedings before it.  Concerning defendant's contentions as to the August 9, 2024 order, we focus primarily on defendant's point two, contending the family court misapplied the law of emancipation, established new factors, and found that children can waive their right to support, and point four, concerning the denial of defendant's motion to change venue.  Because we reverse the family court's emancipation decision and remand for further proceedings, we need not address defendant's contentions regarding the July 18, 2025 order.

II.

A.

Our review of a family court's fact-finding function is limited.  Cesare v. Cesare, 154 N.J. 394, 411 (1998).  We "accord particular deference to the Family Part because of its 'special jurisdiction and expertise' in family matters."  Harte v. Hand, 433 N.J. Super. 457, 461 (App. Div. 2013) (quoting Cesare, 154 N.J. at 412).  "Findings by the [family] court are binding on appeal when supported

11

by adequate, substantial, [and] credible evidence." Cesare, 154 N.J. at 411-12 (citing Rova Farms Resort, Inc. v. Inv'rs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)).

A family court exercises "substantial discretion" in determining parents' contribution to college expenses. Avelino-Catabran v. Catabran, 445 N.J. Super. 574, 588 (App. Div. 2016) (quoting Gotlib v. Gotlib, 399 N.J. Super. 295, 308 (App. Div. 2008)). However, we owe no special deference to the family court's "interpretation of the law and the legal consequences that flow from established facts." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). Nor do we defer to a decision that is "manifestly unreasonable, [or] arbitrary," J.B. v. W.B., 215 N.J. 305, 326 (2013) (citation omitted), or that "ignores applicable standards." Gotlib, 399 N.J. Super. at 309.

Emancipation is a legal determination, imposed when "the fundamental dependent relationship between parent and child" concludes, and is reviewed de novo. Dolce, 383 N.J. Super. at 17; Ricci v. Ricci, 448 N.J. Super. 546, 572 (App. Div. 2017); T.M.S. v. W.C.P., 450 N.J. Super. 499, 502 (App. Div. 2017). In contrast, a family court's decision to modify or terminate child support is

reviewed for an abuse of discretion. J.B., 215 N.J. at 325-26 (quoting Jacoby v. Jacoby, 427 N.J. Super. 109, 116 (App. Div. 2012)).

"One of the fundamental concepts in American society is that parents are expected to support their children until they are emancipated, regardless of whether the children live with one, both, or neither parent." Ricci, 448 N.J. Super. at 570 (quoting Burns v. Edwards, 367 N.J. Super. 29, 39 (App. Div. 2004)). Moreover, "[c]hildren of divorced parents have the right 'to be supported at least according to the standard of living to which they had grown accustomed prior to the separation of their parents.'" Llewelyn, 440 N.J. Super. at 214 (quoting Pascale v. Pascale, 140 N.J. 583, 592 (1995) (citations and internal quotation marks omitted)). Both parents are "responsib[le] to share the costs of providing for [an] . . . unemancipated [child]." Pascale, 140 N.J. at 591.

In determining whether a child is emancipated and support should terminate, "the essential inquiry is whether the child has moved 'beyond the sphere of influence and responsibility exercised by a parent and obtain[ed] an independent status of his or her own.'" Llewelyn, 440 N.J. Super. at 216 (quoting Filippone v. Lee, 304 N.J. Super. 301, 308 (App. Div. 1997)). The "emancipation 'determination involves a critical evaluation of the prevailing circumstances including the child's need, interests, and independent resources,

the family's reasonable expectations, and the parties' financial ability, among other things.'" Llewelyn, 440 N.J. Super. at 216 (quoting Dolce, 383 N.J. Super. at 18 (citations omitted)); see also N.J.S.A. 2A:17-56.67; R. 5:6-9.  Determining whether a child is emancipated is a "fact-sensitive analysis," often requiring a plenary hearing.  Ibid. (citing Newburgh, 88 N.J. at 543).

A statutory presumption of emancipation arises when a child turns eighteen.  Dolce, 383 N.J. Super. at 17 (App. Div. 2006); see also N.J.S.A. 9:17B-3.  That presumption, however, is not conclusive and can be overcome. Ricci, 448 N.J. Super. at 572.  "'In certain situations, parents still have an economic duty to support children after their eighteenth birthday . . . .'"  Ricci, 448 N.J. Super. at 572 (quoting Llewelyn, 440 N.J. Super. at 215).  For instance, a child's "'enrollment in a full-time educational program has been held to require continued support.'"  Ibid. (quoting Patetta v. Patetta, 358 N.J. Super. 90, 94 (App. Div. 2003)).  Payment of "college costs are recognized as a form of support for unemancipated children."  Ibid.  Thus, "[u]nder New Jersey law, an unemancipated child who remains a full[-]time post[-]secondary school student is not emancipated."  Teare v. Bromley, 332 N.J. Super. 381, 391 (citing

14

Newburgh, 88 N.J. at 543; Filippone, 304 N.J. Super. at 301; and Weitzman v. Weitzman, 228 N.J. Super. 346 (App. Div. 1988)).

B.

We begin with the issue of waiver of child support. Defendant contends the family court misapplied the emancipation law by finding that O.S. waived his right to child support by refusing to attend therapy with plaintiff. She also asserts that the court's ruling is contrary to New Jersey law and public policy and O.S.'s best interests.

The family court terminated plaintiff's obligation to provide child support and to contribute to O.S.'s college expenses having ruled that O.S. waived his right to that support by "removing himself from therapy [with plaintiff] claiming he was an adult," "leaving [p]laintiff's sphere of influence voluntarily," and "keep[ing] [p]laintiff out of his life." The court also did not distinguish between plaintiff's obligation to pay child support and contribute toward his son's college costs. "Child support and contribution to college expenses are two discrete yet related obligations imposed on parents." Hudson v. Hudson, 315 N.J. Super. 577, 584 (App. Div. 1998) (internal citations omitted).

It is well-established that the "right to child support belongs to the child and 'cannot be waived by the custodial parent.'" Pascale, 140 N.J. at 591

(quoting Martinetti, 261 N.J. Super. at 512). However, there is nothing prohibiting an adult child from waiving a claim for support provided that waiver is knowing, intelligent, and voluntary. The question here is whether O.S. knowingly and voluntarily waived his right to his father's financial support by refusing to attend therapy with him.

Waiver is the "'intentional relinquishment or abandonment of a known right or privilege." Mazdabrook Commons Homewoners' Ass'n v. Khan, 210 N.J. 482, 505 (2012) (quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938)). "To be valid, waivers must be knowing, intelligent, and voluntary." Ibid.

O.S. testified that he was aware of the family court's order stating his refusal to attend therapy would be a factor in the court's determination of whether he was deemed emancipated. However, he was not asked, nor did he expressly state, that he was relinquishing any claim to financial support from plaintiff. After transferring to Rutgers, plaintiff testified that O.S. initially did not give him access to his student portal although he had such access at MSU. However, when the time came for tuition to be paid, plaintiff acknowledged that "[O.S.] gave me limited access to only the financial aid part of the portal." Plaintiff then paid his share of O.S.'s tuition costs for his first semester at Rutgers. The record is unclear and does not support the court's conclusion that

16

O.S. knowingly, intelligently, and voluntarily waived his right to ongoing financial support from his father simply because he refused to attend therapy with him. Cf. Ibid. (Rights may be waived but courts "indulge every reasonable presumption against waiver of fundamental constitutional rights.")

In finding that O.S. waived his right to support, the family court placed great weight on his refusal to attend therapy with his father, claiming he was an adult and could not be compelled to attend. The court's conclusion, however, fails to recognize precedent that provides: "[n]ot even the absence of a meaningful relationship relieves the legally obliged parent from providing support for a child's basic needs." L.V. v. R.S., 347 N.J. Super. 33, 41 (App. Div. 2002) (citing Fiore v. Fiore, 49 N.J. Super. 219, 227 (App. Div. 1958); and Martinetti, 261 N.J. Super. at 513). A child's right to support from a parent is separate and distinct issue from the parent-child relationship. Thus, the record does not support the family court's finding of a valid waiver of support.

C.

We next address the family court's finding of emancipation. The court's determination that O.S. was emancipated centered on his refusal to attend court-ordered therapy, asserting he was an adult and therefore free to make such decisions on his own. As noted above, the lack of a parent-child relationship

17

does not relieve a parent of their obligation to support their child. Ibid. The court erred in its reliance on this factor as a compelling reason to emancipate O.S. and failed to distinguish between emancipation and estrangement. Moreover, by relying primarily on this factor, the court failed to consider the totality of the circumstances, "including [O.S.'s] needs, interests, and independent resources . . . and the parties' financial ability, among other things," Ricci, 448 N.J. Super. at 572 (quoting Dolce, 383 N.J. Super. at 18), before determining he had left his father's "sphere of influence."

Although the family court detailed O.S.'s tuition costs at Rutgers and his financial aid package which covered those costs, no consideration was given to O.S.'s other basic needs such as food, shelter, transportation and so forth, and how these expenses were being paid for. It is undisputed that O.S. resided at defendant's home, was a full-time student with no outside employment, and commuted to college. The court did not give due regard to O.S.'s full-time student status and the panoply of his needs and interests. On remand, these costs must be considered.

"To aid [the court's] determination . . . of whether and to what extent an obligation to pay for higher education is imposed" on a parent, our Supreme

Court in <u>Newburgh</u> established specific factors to guide the family court's analysis:

> (1) whether the parent, if still living with the child, would have contributed toward the costs of the requested higher education;
> (2) the effect of the background, values and goals of the parent on the reasonableness of the expectation of the child for higher education;
> (3) the amount of the contribution sought by the child for the cost of higher education;
> (4) the ability of the parent to pay that cost;
> (5) the relationship of the requested contribution to the kind of school or course of study sought by the child;
> (6) the financial resources of both parents;
> (7) the commitment to and aptitude of the child for the requested education;
> (8) the financial resources of the child, including assets owned individually or held in custodianship or trust;
> (9) the ability of the child to earn income during the school year or on vacation;
> (10) the availability of financial aid in the form of college grants and loans;
> (11) the child's relationship to the paying parent, including mutual affection and shared goals as well as responsiveness to parental advice and guidance; and
> (12) the relationship of the education requested to any prior training and to the overall long-range goals of the child.
>
> [88 N.J. at 545.]

In the present case, the family court found that consideration of all the <u>Newburgh</u> factors would not be necessary; specifically, because O.S.'s tuition costs at Rutgers "had decreased drastically, and [his] student loans and grants [were]

19

able to fully cover his tuition and then some." The court found that "the other Newburgh factors besides factor [three] d[id] not apply."

Even though these factors relate to "evaluating the claim for contribution toward the cost of higher education," given the interconnectedness of child support and college contribution, these factors would have aided the family court's analysis of O.S.'s overall need for financial support. Ibid. The court erred in not fully analyzing these factors to determine whether O.S. had reached a sufficient level of independence to conclude that he had left the sphere of parental influence. As we have noted, the 'sphere of parental influence' considers multiple factors, including financial independence, and can extend even when a parent and child are estranged and no longer have a non-financial relationship. On remand, to the extent the family court deems O.S. unemancipated and his college costs not fully covered, the court should also consider "all relevant factors." Ibid.

The family court also noted that it was clear defendant "had a heavy influence, to the point of manipulation" on O.S.'s relationship with plaintiff. The court found that defendant "discussed the court's order reducing her alimony with O.S., which caused him to transfer from [MSU] to Rutgers and end his relationship with his father." The family court failed to explain how these facts

weighed in its determination that O.S. had achieved a level of financial independence. "Whether or not [plaintiff] has a continuing obligation to support [O.S.] must be based upon an evaluation of the child's needs and interests and not upon the conduct of the [defendant]." Martinetti, 261 N.J. Super. at 512.

In sum, we reverse the family court's finding of emancipation because the record does not support the court's finding that O.S. knowingly and voluntarily waived plaintiff's financial support. Further, the court erred in concluding that O.S.'s refusal to attend therapy constituted a waiver of support and demonstrated his independent status. Finally, the family court erred by finding O.S.'s refusal to attend therapy is a compelling factor justifying his emancipation.

On remand, the family court shall determine whether O.S. is emancipated either by: (1) a valid waiver of his right to support; or (2) court order determining he has voluntarily left the plaintiff's sphere of influence and achieved independence. In determining whether O.S. is emancipated—namely, whether he "has moved beyond the sphere of influence and responsibility exercised by a parent and obtain[ed] an independent status of his [] own,"—the court shall "critical[ly] evaluate . . . the prevailing circumstances including the child's need, interests, and independent resources, the family's reasonable

21

expectations, and the parties' financial ability," and any other relevant factors. Llewelyn, 440 N.J. Super. at 216 (citations omitted).

If the court determines that O.S. is not emancipated, the court shall determine what, if any, child support and college contribution plaintiff were required to provide. "The payment of college costs differs from the payment of child support for a college student." Jacoby, 427 N.J. Super. at 121 (citing Hudson, 315 N.J. Super. at 584). "[T]he calculation of child support for [a college student] must be based on evaluation of the factors enumerated in N.J.S.A. 2A:34-23a." Id. at 122. The family court must determine "the [child's] individual needs and assess the income, assets, debts, earning ability, age, and health of [the] child and each parent to reach an appropriate level of support." Ibid.

If the family court determines the parties shall contribute toward O.S.'s college expenses, the court must determine whether plaintiff has met the threshold showing of changed circumstances to warrant modification of the January 2 order directing plaintiff to pay 67% of O.S.'s college costs with defendant responsible for 33%. See Id. at 119 (citing Glass v. Glass, 366 N.J. Super. 357, 370 (App. Div. 2004)). "Once a change in circumstances has been

22

demonstrated, the court [must] next determine the appropriate level of support" and decide each party's contribution based on their respective incomes.  Ibid.

## III.

We turn next to defendant's contention that the court erred in denying her motion to change venue.  In the April 30, 2021 order, the court denied defendant's motion without prejudice, stating that defendant "may renew her request for a venue change at the conclusion of the [p]lenary [h]earing."

Motions for change of venue "are addressed to the sound discretion of the court."  State v. Collins, 2 N.J. 406, 411 (1949).  Rule 4:3-3(a), in pertinent part, permits a change of venue:

> (1) if the venue is not laid in accordance with [Rule] 4:3-2 or (2) if there is a substantial doubt that a fair and impartial trial can be had in the county where venue is laid; or (3) for the convenience of parties and witnesses in the interest of justice; or, (4) in Family Part post-judgment motions, if both parties reside outside the county of original venue and application is made to the court by either party to change venue to a county where one of the parties now resides.

Although the family court recognized that the Rule permits a venue change in post-judgment motions where both parties reside outside the county of origin, "the [c]ourt must resolve all outstanding issues . . . before considering a venue transfer."  Because the outstanding emancipation motion remained unresolved,

23

the court denied the request for a venue transfer and permitted defendant to renew the request at the conclusion of the plenary hearing. We discern no abuse of discretion in the court's denial without prejudice of defendant's motion to change venue. We note that either party is free to renew this request to change venue.

IV.

Following the plenary hearing and the August 9, 2024 order emancipating O.S., the family court issued the July 18, 2025 order and accompanying statement of reasons, addressing plaintiff's overpayment of child support and college costs. Defendant also appeals from the July 18 order challenging the reduction of alimony and application of plaintiff's bonus as a credit toward the unreimbursed amounts. Because we reverse the court's emancipation determination and have remanded the matter for a new hearing, we vacate the July 18 order for the court to reconsider the reimbursement amounts following the remand hearing. Therefore, we need not reach defendant's remaining claims.

Finally, we reject the notion that the family court judge demonstrated bias or failed to adhere to the code of judicial conduct in conducting these proceedings. The judge made credibility findings consistent with her fact-finding responsibilities in this matter. See R. 1:7-4. Because of those prior

A-0268-24

findings and orders, we direct on remand that the matter be considered by a different judge to avoid any claim of partiality. See R.L. v. Voytack, 199 N.J. 285, 306 (2009) (Because "the [judge] previously made credibility findings," the matter was appropriately assigned to a different judge); Graziano v. Grant, 326 N.J. Super. 328, 349 (App. Div. 1999) (explaining a remand to a different judge may be appropriate "when there is a concern that the trial judge has a potential commitment to [their] prior findings"); Carmichael v. Bryan, 310 N.J. Super. 34, 49 (App. Div. 1998) (noting that a judge's expression of opinion might evidence a "commitment to [their] findings"). We express no views regarding the outcome of the remand.

Reverse and remand for further proceedings in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

25